IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

COLLEEN JOHNSTON,

        Plaintiff,

vs.                                                      Civ. No. 03-1062 JCH/ACT

TOWN OF CLAYTON, ANDRES CORDOVA
Individually and in his official capacity as Mayor of
Town of Clayton, JERRY MOORE, JIMMY
TAYLOR, MICHAEL JENKINS, FEROL
BECKNER, Individually and in their official
capacities as members of the Town Council of the
Town of Clayton, TOM DAVIES, Individually and in
his official capacity as Town Manager of the Town of
Clayton, BRET BEAMS, Individual and as Chief of
Police for the Town of Clayton,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Enforce Settlement filed September 13, 2004 **[Doc. No. 31]**. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is well taken in part and will be granted in part.

## BACKGROUND

On June 28, 2004, the parties attended a formal settlement conference held pursuant to Federal Rule of Civil Procedure 16. Magistrate Judge Torgerson presided over the conference. Plaintiff's counsel maintains that during the settlement negotiations the parties discussed Plaintiff Johnston's insistence that in the event she returned to work at the Town of Clayton, she (1) would receive her previous salary plus the same percentage of raise that any other police

department employees received in her absence, and (2) would begin work with the same number of hours of sick and vacation leave that she would have earned in her absence.  Plaintiff's counsel maintains that it was Plaintiff's understanding that these two issues were resolved in her favor early in the negotiations process.

After several hours of negotiation, the parties reached an impasse.  Judge Torgerson suggested the parties make a final attempt at settlement, and he asked the parties if they would allow him to draft a settlement agreement based on his conversations with both parties.  Plaintiff maintains that Judge Torgerson offered to present the parties with only a settlement amount.  Defendants, in contrast, state that Judge Torgerson proposed a comprehensive settlement of the case.

Judge Torgerson presented the parties with a proposed settlement agreement entitled "Agreement to Settle."  That agreement provides as follows:  "Plaintiff, COLLEEN JOHNSTON, agrees to accept the sum of $68,000 plus reinstatement to the position of Captain, town of Clayton Police Department, in settlement of all claims raised in the above captioned matter, or which could have been raised in the above captioned matter.  All negative comments, reports and reprimands will also be removed from [Plaintiff's] personnel file."  Mot. to Enforce Settlement, Exh. A.  Judge Torgerson gave the parties time to review the proposed agreement and determine whether they wished to accept the agreement.  After consultation with their counsel, the parties each accepted and signed the Agreement to Settle at the settlement conference.

Plaintiff's counsel maintains that Plaintiff specifically asked him if the Agreement to Settle included vacation and sick leave she would have earned in her absence.  Based upon Plaintiff's

counsel's understanding of earlier negotiations, he assured Plaintiff that the settlement would include a raise, provided that other police department employees received a raise, and that it would include sick and vacation leave accrued during Plaintiff's absence.

On July 2, 2004, counsel for Plaintiff sent counsel for Defendants a letter purporting to set forth his understanding of the settlement reached on June 28, 2004.  In the letter Plaintiff's counsel maintained that under the terms of the settlement Plaintiff not only would assume her position as Captain of the Clayton Police Department, be paid a lump sum of $68,000, and have all negative comments removed from her record, but she also would "have 128 hours of sick leave and 120 hours of vacation," would receive "any raises [that] have occurred during her absence," would be given her office, computer, and all other items associated with her position, and would be "given retirement credit for the period since she has been terminated with PERA."  Mot. to Enforce Settlement, Exh. B.

On July 6, 2004, and July 12, 2004, counsel for Defendants sent Plaintiff's counsel letters stating that the terms of the July 2, 2004, letter did not represent accurately the terms of the parties' settlement agreement.  In his July 12, 2004, letter, Defendant's counsel attached a copy of the July 2, 2004, letter modified to reflect the terms of the Agreement to Settle signed by the parties.  Specifically, Defendants' counsel deleted the language indicating that Plaintiff would have 128 hours of sick and 120 hours of vacation leave, that she would be entitled to any raises that occurred during her absence, that she would be entitled to her office, computer, and all other items associated with her position, and that the Town of Clayton would be obligated to take all steps necessary to ensure Plaintiff is given retirement credit for the period she has been

terminated.  Although not in the Agreement to Settle, Defendants' counsel offered to add the following language:  the "Town of Clayton will cooperate with [Plaintiff] Johnston as to her efforts to buy back the time she was off from PERA."

On July 27, 2004, counsel for Plaintiff sent a second letter asking Defendants to "verify that the Town of Clayton is going to adhere to the terms of our settlement as outlined in [the] letter of July 2, 2004."  Plaintiff's counsel further stated that if he did not receive notification by 5:00 p.m., July 28, 2004, that Defendants "are in agreement with each and every point of th[e] [July 2] letter," Plaintiff's counsel would "notify Judge Torgerson of [Defendants'] violation of the terms of the agreement."  Mot. to Enforce Settlement, Exh. C.  Defendants' counsel did not acquiesce in this demand.

On September 9, 2004, Plaintiff's counsel sent Defendants' counsel another letter by facsimile informing Defendants' attorneys that the case would not settle unless certain additional terms were included as part of the settlement.  Thereafter, on September 13, 2004, Defendants filed the present Motion to Enforce Settlement.

On November 8, 2004, Judge Torgerson filed a Certificate of Proceedings outlining the parties' positions and agreement at the Rule 16 settlement conference.  This Court, as well as counsel for both parties, requested a Certificate of Proceedings from Judge Torgerson.  Among other things, the Certificate of Proceedings indicates that Judge Torgerson proposed to the parties that he "suggest terms of a settlement which the parties could either accept or reject."  Certificate of Proceedings, p. 4.  The Certificate of Proceedings also indicates that "neither Plaintiff nor the Defendants requested any modification, clarification, or additions to the terms of the settlement

proposed by [Judge Torgerson] prior to signing the Agreement to Settle." *Id.* The Certificate of Proceedings does not indicate that the Agreement to Settle constituted a partial settlement agreement or that the issues of pay raises and vacation and sick leave were settled by the parties early in the negotiation. *See generally id.*

## DISCUSSION

I.   Enforceability of the Agreement to Settle.

Defendants ask this Court to enforce only the express terms of the Agreement to Settle. Plaintiff, however, asks this Court to enforce the Agreement to Settle, but also to modify its terms to require Defendants to provide Plaintiff with any raises that were received by other police department employees and to provide her with 128 hours of sick and 120 hours of vacation leave.[1]

The parties do not dispute that the Agreement to Settle constitutes a contract between the parties. *See generally* Mot. to Enforce Settlement; Reply to Resp. to Mot. to Enforce Settlement; Resp. to Mot. to Enforce Settlement (seeking an order to enforce the settlement agreement and to add certain terms); *see also id.* ¶¶ 3, 4. Rather, Plaintiff argues that the Agreement to Settle pertains only to the amount of the parties' settlement, *see id.* ¶ 4, that the other issues of pay raises and sick and vacation leave were resolved in Plaintiff's favor early on in the negotiations, and that "those issues were part and parcel of the final settlement agreement" even though they were not included in the express provisions of the Agreement to Settle, *id.* ¶ 3.

---

[1] Plaintiff asks the Court to grant this affirmative relief in her Response to the Motion to Enforce Settlement. Although Plaintiff has not requested the relief by way of a motion, the Court nonetheless will consider Plaintiff's request in this Memorandum and Opinion Order.

The Court is not persuaded by Plaintiff's argument that the Agreement to Settle constitutes a partial settlement agreement.  The Agreement to Settle on its face is sufficiently specific and unambiguous to constitute a complete, integrated, and binding contractual settlement agreement.  Nothing within the four corners of the Agreement indicates that it pertains only to the dollar amount of the parties' settlement.  The Agreement is titled generally "Agreement to Settle" and makes no reference to being a partial settlement agreement.  Moreover, the Certificate of Proceedings filed by Judge Torgerson does not indicate that the Agreement to Settle was a partial agreement or that the issues of raises and vacation and sick leave were settle early in the negotiations process.  *See generally* Certificate of Proceedings. To the contrary, the Certificate of Proceedings indicates that Judge Torgerson generally suggested "terms of a settlement"--and not terms of a partial settlement--and that "neither [party] requested any modification, clarification, or additions to the terms of the settlement proposed by the Court."  *Id.* at 4.

In addition, and more tellingly, the Agreement to Settle contains specific terms unrelated to the settlement amount of $68,000.00.  Specifically, the Agreement to Settle provides not only that Defendant shall pay Plaintiff $68,000.00 but also that (1) Plaintiff shall be reinstated to the position of Captain and (2) "[a]ll negative comments, reports and reprimands will also be removed from Plaintiff's personnel file."  Mot. to Enforce Settlement, Exh. A.  This specific language unrelated to the settlement amount negates Plaintiff's argument that the Agreement to Settle constitutes only a partial settlement of the dollar value of this case.  Moreover, the Agreement expressly provides that the settlement applies to "all claims raised in the above captioned matter, or which could have been raised in the above captioned matter."  *Id.*  This language further

confirms the final, complete, and integrated nature of the settlement agreement between the parties.

Having found that the Agreement to Settle constitutes a complete, integrated, and binding contract, the Court next must determine whether Plaintiff should be allowed to introduce parol evidence to modify the terms of the contract. "Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law." *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). In New Mexico, "[a]s a general rule, parol evidence will not be allowed to change the terms of an integrated, written agreement." *Drink, Inc. v. Martinez*, 89 N.M. 662, 664, 556 P.2d 348, 350 (N.M. 1976) (citing *Woodson v. Lee*, 73 N.M. 425, 389 P.2d 196 (N.M. 1963)). If no exceptions to this general rule apply to this case, the Court must enforce the Agreement to Settle as it currently is written.

One exception to the rule is that parol evidence "always [may] be introduced to establish that the document is not the true agreement of the parties--that in fact there was no meeting of the minds; that, by reason of mistake, there was no consent to the apparent agreement." *Id.* (citing S. Gard, Jones on Evidence § 16:4, at 85 (6th ed. 1972)). To admit parol evidence and seek reformation of a contract under this exception, Plaintiff must demonstrate that there was either a mutual mistake of the parties or a mistake on the part of one party. *See, e.g.*, *id.* In the case of a unilateral mistake, Plaintiff must also demonstrate (1) that the other party engaged in fraudulent or inequitable conduct, *see id.*, or (2) that enforcement of the contract would "inflict on the party seeking recission hardship out of all proportion to the value of the other party's justifiable expectation interest," *Crowne Life Ins. Co. v. Candlewood, Ltd.*, 112 N.M. 633, 637, 818 P.2d

411, 415 (N.M. 1991) (citing H. McClintock, *Handbook of the Principles of Equity* § 90, at 243-44 (2d ed. 1948)).

Plaintiff has not argued, and this Court does not find, that the Agreement to Settle reflects a mutual mistake of the parties.  To the contrary, Defendants maintain that the express terms of the Agreement to Settle are accurate and that the Court should enforce the Agreement to Settle as it currently reads.  Accordingly, the parol evidence rule is not waived by virtue of a mutual mistake of the parties.

Plaintiff likewise has not argued, and this Court does not find, that the Agreement to Settle should be reformed based upon the unilateral mistake of Plaintiff.  Specifically, Plaintiff has not demonstrated as she must that Defendants engaged in fraudulent or inequitable conduct, *see Drink*, 89 N.M. at 664, 556 P.2d at 350, or that enforcement of the contract would inflict a disproportionate hardship on Plaintiff, *see Crowne*, 112 N.M. at 637, 818 P.2d at 415 (citation omitted).   Indeed, nowhere in her Response to the Motion to Enforce Settlement does Plaintiff argue that Defendants engaged in any improper conduct, that Defendants knew that Plaintiff misunderstood the terms of the settlement agreement, or that Plaintiff would suffer undue and unreasonable hardship if the Court does not alter the terms of the Agreement to Settle.[2]  Rather, Plaintiff argues only that her counsel, based on "his understanding of the earlier negotiations, . . . assured the Plaintiff that the settlement would include a raise, provided that other police

_____

[2] Even if Plaintiff had argued that she would suffer undue hardship absent reformation, the Court would reject Plaintiff's argument.  The loss of a pay raise, if any, and sick and vacation leave does not constitute undue or unreasonable hardship when balanced against Defendants' expectation interest in settling this case.  *See Crown*, 112 N.M. at 637, 818 P.2d at 415 (citation omitted).

department employees received a raise, along with the sick leave and the vacation time." Resp. to Mot. to Enforce Settlement, ¶ 4. This argument is not sufficient to demonstrate that the Court should consider parol evidence or modify the terms of the Agreement to Settle.

Because the parties entered into a final, complete, and integrated Agreement to Settle this case, and because Plaintiff has not provided any legal basis for reforming the Agreement to Settle, the Court holds that the Agreement to Settle, as written, constitutes a binding contract with which the parties must comply.

II.   Attorney's Fees and Costs.

Defendants also ask this Court to award attorney's fees and costs to them because they had to seek judicial enforcement of the settlement. Under the "American Rule" governing respective financial burdens of litigating civil claims, the prevailing party is not entitled to collect attorney's fees from the losing party. *See McCall*, 235 F.3d at 1216 (citation omitted). The Tenth Circuit has explained, however, that under a narrow exception to the American Rule, a trial court may award attorney's fees when a party's opponent acts "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Sterling Energy Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984)). Awarding fees under the bad faith exception is within a trial court's discretion. *See id.* To justify a shifting of fees, however, this court "'requires more than merely a finding that a claim was frivolous when brought . . . . The bad faith exception is drawn very narrowly and may be resorted to only in exceptional cases and for dominating reasons of justice.'" *Id.* (quoting *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir. 1981)) (additional citation omitted).

The Court does not believe Plaintiff's conduct rises to the level of "bad faith," "vexatious[]," "wanton[]," or "oppressive" conduct or that "dominating reasons of justice" require an award of attorney's fees. *Id.* In *United States v. McCall*, the Tenth Circuit awarded attorney's fees because the actions of a party refusing to comply with a settlement agreement went "'well beyond refusal to accept the amount in compromise.'" *Id.* at 1217 (quoting Mem. Op. & Order, CV-95-846M, at 14 (Mecham, J. presiding)). In addition, the party did not utilize counsel, ignored clear and long-standing legal principles, repudiated its own settlement offer, initiated an action to foreclose, and caused an additional action to be filed without factual or legal premise in attempt to enforce original obligations as if no settlement agreement had been reached. *See id.* In contrast, Plaintiff here did utilize counsel, did not repudiate her own settlement offer, did not initiate any additional litigation, and did not act as if no settlement agreement had been reached. Although admittedly Plaintiff did not support her refusal to comply with the terms of the Agreement to Settle with any legal authority (and Defendants argue that Plaintiff's refusal to comply with the Agreement contravenes long-standing legal principles), Plaintiff's failure in this regard does not rise to the level of bad faith sufficient to justify an award of attorney's fees and costs.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendants' Motion to Enforce Settlement, filed September 13, 2004 **[Doc. No. 31]**, is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1.       Defendants' request for an order enforcing the June 28, 2004, Agreement to Settle

as written is GRANTED; Plaintiff is ordered immediately to take all steps necessary to complete

the settlement reached on June 28, 2004, as memorialized by the Agreement to Settle, within

thirty (30) days from the date of this Memorandum Opinion and Order; and

      2.      Defendants' request for attorney's fees and costs is DENIED.

Dated this 1st day of December, 2004.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:

      Warren F. Frost, Esq.

Attorney for Defendants:

      Robert O. Beck, Esq.